Justice HEARN.
In this case brought in our original jurisdiction, fifteen inmates who were sentenced to life without parole as juveniles petition this Court for resentencing in light of the United States Supreme Court’s decision in Miller v. Alabama, — *537 U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).[1] We hold their sentences violate the Eighth Amendment under Miller and the petitioners and those similarly situated are entitled to resentencing.
FACTUAL/PROCEDURAL BACKGROUND
The petitioners were all convicted for homicides committed while they were juveniles. Some pled guilty and others were convicted after a jury trial. Some were found directly responsible for the relevant homicide while others were convicted under a theory of accomplice liability. All were sentenced to life without parole according to existing sentencing procedures, which made no distinction between defendants whose crimes were committed as an adult and those whose crimes were committed as a juvenile. In most of the sentencing hearings — but not all — defense counsel mentioned the age of the defendant at the time of the crime, and in some cases, there was a brief discussion of the defendant’s life prior to commission of the crime. Of the fifteen petitioners, thirteen of their cases have become final.[2]
The petitioners filed a petition for a writ of certiorari in our original jurisdiction, naming the Director of the South Carolina Department of Corrections, William R. Byars, Jr., and Attorney General Alan Wilson as the respondents. We granted certiorari to address the effect of Miller on the petitioners and others similarly situated who were sentenced to life without parole as juveniles.
ISSUES PRESENTED
I. Does Miller apply retroactively?
*538 II. Does Miller apply to juveniles who received a nonmandatory sentence of life without parole?
LAW/ANALYSIS
The Eighth Amendment to the United States Constitution provides, “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” U.S. Const. amend. VIII.[3] Although the earliest Eighth Amendment cases focused on the barbarous nature of a punishment, the jurisprudence evolved to encompass challenges to the proportionality of the sentence to the offense. Gregg v. Georgia, 428 U.S. 153, 170-72, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). When considering whether a sentence is proportional, the Supreme Court has acknowledged that the scope of the Eighth Amendment is not static, but “must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.” Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion).
In Miller, the United States Supreme Court confronted a challenge to the mandatory imposition of life without parole sentences on juveniles as violative of the Eighth Amendment’s prohibition of cruel and unusual punishments. 132 S.Ct. at 2461. In considering this question, the Supreme Court analyzed two strands of precedent impacting the proportionality compelled by the Eighth Amendment. The first line of cases dealt with categorical bans on certain sentences based on the inability to reconcile the class of offenders and the severity of the penalty. In Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court invalidated the death penalty for all juvenile offenders. Thereafter, in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court held that life without parole violates the Eighth Amendment when imposed on juvenile nonhomicide offenders. The Miller Court noted that Graham equated life without parole sentences for juveniles to the death penalty, invoking a second line of cases that require sentencing authorities to consider the individual characteristics of a defendant *539 and the details of his offense prior to imposing a sentence of death. 132 S.Ct. at 2463-64; see also Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion) (holding that “in all but the rarest kind of capital case” the sentencer must “not be precluded from considering as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death”); Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (requiring “consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death”). The Court therefore held that “the confluence of these two lines of precedent leads to the conclusion that mandatory life-without parole sentences for juveniles violates the Eighth Amendment.” 132 S.Ct. at 2464. A sentencer must be allowed to consider that “youth is more than a chronological fact,” and carries with it “immaturity, irresponsibility, impetuousness[,] and recklessness,” factors as transient as youth itself. Id. at 2467 (alteration in original). Although a court may still sentence a juvenile to life without parole after an individualized hearing, the Court cautioned that given “children’s diminished culpability and heightened capacity for change” the “appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.” Id. at 2469.
I. RETROACTIVITY
Before considering whether Miller applies to juveniles who received a sentence of life without parole under a non-mandatory scheme, we first must resolve the threshold issue of whether Miller applies retroactively.
Under our current jurisprudence, the United States Supreme Court’s decision in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), governs whether a new rule of criminal procedure is retroactive.[4] Talley v. State, 371 *540 S.C. 535, 640 S.E.2d 878 (2007). In Teague, the Supreme Court held that a new constitutional rule of criminal procedure should not apply to cases that became final before the new rule is announced. 489 U.S. at 310, 109 S.Ct. 1060. However, this general prohibition against the retroactive application of new constitutional rules is subject to two exceptions.[5] First, a new rule may be applied retroactively if the rule is substantive. Id. at 311, 109 S.Ct. 1060. Second, a new rule may be applied retroactively if it is a “watershed rule” of criminal procedure. Id. We need not consider whether Miller’s holding constitutes a watershed rule because we find it is substantive and thus meets Teague’s first exception.
A rule is substantive if it prohibits the States from criminalizing certain conduct or prohibits “a certain category of punishment for a class of defendants because of their status or offense.” Saffle v. Parks, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated by Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)). New substantive rules apply retroactively on collateral review because they “necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.” Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (internal quotation marks omitted). By contrast, a rule that merely regulates the manner in which a defendant is adjudicated guilty is procedural. Id.
We conclude Miller creates a new, substantive rule and should therefore apply retroactively.[6] The rule plainly ex- *541 eludes a certain class of defendants — juveniles—from specific punishment — life without parole absent individualized considerations of youth.[7] Failing to apply the Miller rule retroactively risks subjecting defendants to a legally invalid punishment. Moreover, while not in itself determinative, we find support for our conclusion in the Court’s decision to apply the rule announced in Miller to the companion case Jackson v. Norris, 2011 Ark. 49, 378 S.W.3d 103 (2011). Although Miller was on direct appeal, Jackson involved a petition for habeas corpus after the affirmance of the defendant’s convictions. That case was therefore final and was before the Court on collateral review. As noted by the Iowa Supreme Court, “There would have been no reason for the Court to direct such an outcome if it did not view the Miller rule as applying retroactively to cases on collateral review.” Ragland, 836 N.W.2d at 116.
II. SCOPE OF MILLER’S HOLDING
A. Applicability of Miller to the petitioners
Having concluded the rule in Miller applies retroactively, we now turn to whether it extends to the petitioners, who were sentenced to life without parole under a nonmandatory statutory scheme.
In analyzing the precedent relevant to the constitutional question before it, the Court in Miller noted that Roper and Graham established that children were constitutionally differ *542 ent from adults for sentencing purposes, a conclusion that was based on common sense as well as science and social science. 132 S.Ct at 2464. “Roper and Graham emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.” Id. at 2465. Specifically, the Court noted juveniles differ from adults in their general “lack of maturity and [ ] underdeveloped sense of responsibility,” “vulnerability] ... to negative influences and outside pressures, including family and peers,” and still evolving character and personality traits. Id. at 2464 (ellipsis in original) (quoting Roper, 543 U.S. at 569-70, 125 S.Ct. 1183). Important to our determination of the breadth of the Miller decision is this statement by the majority: “Graham’s reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses.” Id. at 2465.
Thus, the Miller Court unequivocally held that youth has a constitutional dimension when determining the appropriateness of a lifetime of incarceration with no possibility of parole, and that the mandatory penalty schemes at issue prevented the sentencing authority from considering the differences between adult and juvenile offenders before imposing a sentence of life without parole. Focusing on Graham’s treatment of juvenile life sentences as analogous to capital punishment, the majority held that Woodson and its progeny required an individualized sentencing proceeding before imposing a sentence of life without parole on a juvenile offender. Id. at 2467.
We recognize that in holding the Eighth Amendment proscribes a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders, the Court did not expressly extend its ruling to states such as South Carolina whose sentencing scheme permits a life without parole sentence to be imposed on a juvenile offender but does not mandate it. Indeed, the Court noted that because its holding was sufficient to decide the cases before it, consideration of the defendants’ alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles was unnecessary. Id. at 2469. However, we must give effect to the proportionality rationale integral to *543 Miller’s holding — youth has constitutional significance. As such, it must be afforded adequate weight in sentencing.
Thus, we profoundly disagree with the position advanced by the respondents and the dissent that the import of the Miller decision has no application in South Carolina. Miller is clear that it is the failure of a sentencing court to consider the hallmark features of youth prior to sentencing that offends the Constitution. Contrary to the dissent’s interpretation, Miller does more than ban mandatory life sentencing schemes for juveniles; it establishes an affirmative requirement that courts fully explore the impact of the defendant’s juvenility on the sentence rendered.
As evidenced by the record, although some of the hearings touch on the issues of youth, none of them approach the sort of hearing envisioned by Miller where the factors of youth are carefully and thoughtfully considered.[8] Many of the attorneys mention age as nothing more than a chronological fact in a vague plea for mercy. Miller holds the Constitution requires more. As the majority states succinctly, “Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. We believe this statement deserves universal application. The absence of this level of inquiry into the characteristics of youth produced *544 a facially unconstitutional sentence for these petitioners. In our view, whether their sentence is mandatory or permissible, any juvenile offender who receives a sentence of life without the possibility of parole is entitled to the same constitutional protections afforded by the Eighth Amendment’s guarantee against cruel and unusual punishment. The petitioners and those similarly situated are accordingly entitled to resentencing to allow the inmates to present evidence specific to their attributes of youth and allow the judge to consider such evidence in the light of its constitutional weight.
B. Appropriate Procedure
We turn finally to the scope of the resentencing hearings that we order today. Miller requires the sentencing authority “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” 132 S.Ct. at 2469. Consequently, Miller establishes a specific framework, articulating that the factors a sentencing court consider at a hearing must include: (1) the chronological age of the offender and the hallmark features of youth, including “immaturity, impetuosity, and failure to appreciate the risks and consequence”; (2) the “family and home environment” that surrounded the offender; (3) the circumstances of the homicide offense, including the extent of the offender’s participation in the conduct and how familial and peer pressures may have affected him; (4) the “incompetencies associated with youth — for example, [the offender’s] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender’s] incapacity to assist his own attorneys”; and (5) the “possibility of rehabilitation.” 132 S.Ct. at 2468.
While we do not go so far as some commentators who suggest that the sentencing of a juvenile offender subject to a life without parole sentence should mirror the penalty phase of a capital case,[9] we are mindful that the Miller Court specifically linked the individualized sentencing requirements of capital sentencing to juvenile life without parole sentences. 132 S.Ct. at 2463, 2467-68. Thus, the type of mitigating evidence permitted in death penalty sentencing hearings unquestion *545 ably has relevance to juvenile life without parole sentencing hearings, in addition to the factors illustrated above.
Without question, the judge may still determine that life without parole is the appropriate sentence in some of these cases in light of other aggravating circumstances. Our General Assembly has made the decision that juvenile offenders may be sentenced to life without parole, and we honor that decision. However, Miller requires that before a life without parole sentence is imposed upon a juvenile offender, he must receive an individualized hearing where the mitigating hallmark features of youth are fully explored.[10]
CONCLUSION
We hold the principles enunciated in Miller v. Alabama apply retroactively to these petitioners, to those similarly situated, and prospectively to all juvenile offenders who may be subject to a sentence of life imprisonment without the possibility of parole. Accordingly, any individual affected by our holding may file a motion for resentencing within one year from the filing of this opinion in the court of general sessions where he or she was originally sentenced.
BEATTY, J., concurs. PLEICONES, J., concurring in a separate opinion. TOAL, C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.
Justice PLEICONES:
I agree with the majority that petitioners and those similarly situated should be allowed to seek resentencing in a proceeding that complies with the standards announced in Miller v. Alabama, -U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). While I agree with the dissent that Miller does not require that we grant relief to juveniles who received discretionary life without the possibility of parole (LWOP) sen *546 tences, and that the majority exceeds the scope of current Eighth Amendment jurisprudence in ordering relief under Miller, I would reach the same result under S.C. Const. art. I, § 15.
For the reasons given above, I concur in the result reached by the majority to allow persons sentenced as juveniles to LWOP to be resentenced upon their timely request.

. In South Carolina, pursuant to Section 63-19-20 of the South Carolina Code (2010), a juvenile is a person less than seventeen years of age. However, Miller extends to defendants under eighteen years of age and therefore for the purposes of this opinion we consider juveniles to be individuals under eighteen.

. Our holding is moot with respect to Damian Inman, whose convictions and sentences were reversed on other grounds in State v. Inman, 409 S.C. 19, 760 S.E.2d 105 (2014), and Dondre Scott, whose convictions and sentences were reversed on other grounds in State v. Scott, 406 S.C. 108, 749 S.E.2d 160 (Ct.App.2013).

. The Eighth Amendment applies against the states by virtue of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

. This Court has not addressed whether it should employ a more expansive analysis for determining retroactivity after Danforth v. Minnesota, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), which held that state courts can use a broader test than Teague. Id. at 282, 128 S.Ct. 1029 (holding that Teague "does not in any way limit the *540 authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed ‘nonretroactive’ under Teague ”). We find it unnecessary to do so today because Miller is clearly retroactive under Teague.

. The parties do not dispute that Miller announced a new rule, only whether an exception applies.

. Our holding is in accord with several other jurisdictions that have addressed this question. See, e.g., People v. Williams, 367 Ill.Dec. 503, 982 N.E.2d 181, 196-97 (Ill.App.Ct.2012); State v. Ragland, 836 N.W.2d 107, 116 (Iowa 2013); Diatchenko v. Dist. Attorney for Suffolk *541 Dist., 466 Mass. 655, 1 N.E.3d 270, 281 (2013); Jones v. State, 122 So.3d 698, 702 (Miss.2013); see also Erwin Chemerinsky, Chemerinsky: Juvenile Life-Without-Parole Case Means Courts Must Look at Mandatory Sentences, A.B.A J. Law News Now (Aug. 8, 2012, 8:30 AM), http:// www.abajournal.com/news/article/chemerinsky_juvenile_life-withoutparole_case_means_courts_must_look_at_sen/ (“[Miller] says that it is beyond the authority of the criminal law to impose a mandatory sentence of life without parole. It would be terribly unfair to have individuals imprisoned for life without any chance of parole based on the accident of the timing of the trial.”).

. We fear that the dissent is conflating the retroactivity analysis and the applicability analysis. A particular jurisdiction's statutory framework has no bearing on the threshold determination of whether Miller applies retroactively. A new rule announced by the Supreme Court is not amorphous; it is either a substantive rule of law that applies retroactively, or it is not.

. The dissent’s discussion of the individual sentencing hearings — in particular its recitation of Angelo Ham's — does not dissuade us of the accuracy of this statement. Instead it highlights the distinction between its reading of Miller and ours — we recognize and give credence to the decision's command that courts afford youth and its attendant characteristics constitutional meaning. The dissent would simply continue to treat the characteristics of youth as any other fact.
We are likewise unfazed by the dissent's criticism that we have failed to pinpoint an abuse of discretion; that admonition appears to arise from a fundamental misunderstanding of our holding. We have determined that the sentencing hearings in these cases suffer from a constitutional defect — the failure to examine the youth of the offender through the lens mandated by Miller. We decline to denominate the error an abuse of discretion because the sentencing courts in these instances did not have the benefit of Miller to shape their inquiries. Those courts will have the opportunity on resentencing to exercise their discretion within the proper framework as outlined by the United States Supreme Court.

. See Chemerinsky, supra note 6.

. We decline the dissent’s invitation to set out a specific process for trial court judges to follow when considering whether to sentence a juvenile to life without parole. The United States Supreme Court did not establish a definite resentencing procedure and we likewise see no reason to do so. We have the utmost confidence in our trial judges to weigh the factors discussed herein and to sentence juveniles in light of this new constitutional jurisprudence.