Justice BEASLEY dissenting.
While I agree with the majority that defendant is entitled to resentencing and that the statute does not constitute an ex post facto law or violate due process protections, I disagree with the majority's judicial construction of N.C.G.S. § 15A-1340.19C(a). The majority finds seemingly ambiguous language within N.C.G.S. § 15A-1340.19C(a), in order to read it as constitutionally complying with **100 Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) ; however, N.C.G.S. § 15A-1340.19C(a) is clear and unambiguous, and I would hold the plain meaning of this section unconstitutional under Miller because it creates a presumption in favor of sentencing a juvenile to life without parole. Therefore, I respectfully dissent.
Here, defendant challenges, inter alia, N.C.G.S. § 15A-1340.19C(a) as creating a presumptive sentence of life without parole for juveniles in direct opposition to the Supreme Court of the United States' interpretation of the Eighth Amendment's prohibition of cruel and unusual punishments in Miller . See Miller , 567 U.S. at 470, 132 S.Ct. at 2463-64, 183 L.Ed.2d at 418 ; see also Montgomery v. Louisiana , 577 U.S. ----, ----, 136 S.Ct. 718, 736, 193 L.Ed.2d 599, 622 (2016) (holding that Miller is a substantive rule of constitutional law and thus applying its standard retroactively to juveniles sentenced to life without parole by allowing "juvenile homicide offenders to be considered for parole, rather than by resentencing them"). "Although Miller did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children , those whose crimes reflect 'irreparable corruption.' " Montgomery , 577 U.S. at ----, 136 S.Ct. at 726, 193 L.Ed.2d at 611 (emphasis added) (quoting Miller , 567 U.S. at 479-80, 132 S.Ct. at 2469-70, 183 L.Ed.2d at 424 (quoting Roper v. Simmons , 543 U.S. 551, 573, 125 S.Ct. 1183, 1197, 161 L.Ed.2d 1, 24 (2005) ) ). Therefore, a presumption in favor of sentencing a juvenile to life without parole would contravene Miller' s admonition to only sentence the "rarest" of juveniles to such a punishment.
"Where the language of a [statute] is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."
*212 King v. Albemarle Hosp. Auth. , --- N.C. ----, ----, 809 S.E.2d 847, 852 (2018) (Beasley, J., dissenting) (brackets in original) (quoting State v. Camp , 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) ); see also Dep't of Transp. v. Adams Outdoor Advert. of Charlotte Ltd. P'ship , 370 N.C. 101, 107, 804 S.E.2d 486, 492 (2017) ("When the language of a statute is plain and free from ambiguity, expressing a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended, and the statute must be interpreted accordingly." (quoting State Highway Comm'n v. Hemphill , 269 N.C. 535, 539, 153 S.E.2d 22, 26 (1967) ) ). In fact, "[t]he actual intention of the legislat[ure] is quite immaterial [to a plain reading construction]; what matters is the way in which [legislators] ha[ve] actually expressed [their] intention. We must look to the wording of the statute, and to that alone."
**101 King , --- N.C. at ----, 809 S.E.2d at 852 (alterations two through five in original (quoting Ernest Bruncken, Interpretation of the Written Law , 25 Yale L.J. 129, 130 (1915) ) ).
N.C.G.S. § 15A-1340.19C(a), with respect to sentencing a juvenile upon a conviction for first-degree murder based on a theory of premeditation and deliberation, provides that "[t]he court shall consider any mitigating factors in determining whether, based upon all the circumstances of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole instead of life imprisonment without parole." N.C.G.S. § 15A-1340.19C(a) (2017) (emphases added). In interpreting the plain meaning of this section, defendant argues that the language " 'instead of' strongly suggests that a sentence of life with parole is simply a secondary alternative to the default sentence of life without parole." Defendant further contends that "the court's decision under the sentencing scheme is guided almost exclusively by the existence of mitigating factors" and "does not require evidence of any aggravating factors that would render a juvenile eligible for the higher sentence of life without parole." Defendant notes that mitigating factors are used by defendants only to show that their case "warrant[s] a less severe sentence." State v. Norris , 360 N.C. 507, 512, 630 S.E.2d 915, 918, cert. denied , 549 U.S. 1064, 127 S.Ct. 689, 166 L.Ed.2d 535 (2006).
Here, the Court of Appeals found "that the use of 'instead of' [in N.C.G.S. § 15A-1340.19C(a) ], considered alone, does not show there is a presumption in favor of life without parole." State v. James , --- N.C. App. ----, ----, 786 S.E.2d 73, 79 (2016). Nonetheless, the Court of Appeals also deduced that
the reason for the General Assembly's use of "instead of" in N.C. Gen. Stat. § 15A-1340.19C(a), as opposed to "or," becomes clear when considered in light of the fact that the sentencing guidelines require the court to consider only mitigating factors. Because the statutes only provide for mitigation from life without parole to life with parole and not the other way around, it seems the General Assembly has designated life without parole as the default sentence , or the starting point for the court's sentencing analysis. Thus, to the extent that starting the sentencing analysis with life without parole creates a presumption, we agree with defendant there is a presumption.
Id. at ----, 786 S.E.2d at 79 (emphasis added).
**102 In this case, the legislature expressed its meaning unambiguously in N.C.G.S. § 15A-1340.19C(a) to require a presumption for life without parole, and I agree with the Court of Appeals' conclusion that this provision creates a presumption for life without parole. Id. at ----, 786 S.E.2d at 79. Unlike the Court of Appeals, however, I would find the existence of a presumption in favor of sentencing a juvenile to life without parole unconstitutional under Miller .
A presumptive sentence of life without parole for juveniles sentenced under this statute contradicts Miller . " Miller determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.' " Montgomery , 577 U.S. at ----, 136 S.Ct. at 734, 193 L.Ed.2d at 619 (quoting Miller , 567 U.S. at 479-80, 132 S.Ct. at 2469-70, 183 L.Ed.2d at 424 ). Furthermore, Miller and its predecessors, Roper v. Simmons and *213 Graham v. Florida , have emphatically established "that children are constitutionally different from adults for purposes of sentencing." Miller , 567 U.S. at 471, 132 S.Ct. at 2464, 183 L.Ed.2d at 418 ; see Roper , 543 U.S. at 568, 125 S.Ct. at 1194-95, 161 L.Ed.2d at 21-22 (holding that the death penalty may not be constitutionally imposed on juveniles because to do so would violate the Eighth Amendment); see also Graham v. Florida , 560 U.S. 48, 74, 130 S.Ct. 2011, 2029-30, 176 L.Ed.2d 825, 845 (2010) ("This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole."). Juveniles "are less deserving of the most severe punishments," Miller , 567 U.S. at 471, 132 S.Ct. at 2464, 183 L.Ed.2d at 418 (quoting Graham , 560 U.S. at 68, 130 S.Ct. at 2026-27, 176 L.Ed.2d at 841 ), and "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." Id. at 472, 132 S.Ct. at 2464-65, 183 L.Ed.2d at 419. A presumption in favor of life without parole-the harshest sentence that a juvenile may receive constitutionally under the Eighth Amendment-flouts Miller and should not be upheld by this Court.[1] **103 Here, the presumption of life without parole is apparent when considering that, in combination with its use of the phrase "instead of," N.C.G.S. § 15A-1340.19C(a) only requires the trial court to evaluate mitigating factors. While the majority aptly demonstrates that "instead of" is defined as "an alternative or substitute," rather than a categorical *214 indication of one preferred method over another, the majority fails to properly consider the role of weighing aggravating versus mitigating factors and the effect of this balancing process on the trial court's choice to sentence a defendant to "life imprisonment with parole instead of life imprisonment without parole." N.C.G.S. § 15A-1340.19C(a) (emphasis added). Specifically, after recognizing that mitigation makes a sentence "less severe, serious, or painful," the majority merely concludes that requiring consideration of only mitigating factors "does not compel the conclusion that persuading the sentencing court to adopt and credit **104 such mitigating evidence is necessary in order to preclude the imposition of a more severe, and presumptively correct, sentence." Given the majority's provided definition of mitigating (namely, reducing the severity of a sentence), the consideration of mitigating circumstances can only operate to move from a harsher to a lesser sentence. Therefore, in this context, mitigation can only mean one thing-moving from imposing a life sentence without the possibility of parole to a life sentence with the possibility of parole.
The statute's language, viewed both independently and in conjunction with the other portions of the North Carolina structured sentencing statutes codified in Article 81B of Chapter 15A, in which trial courts weigh not only mitigating factors but also aggravating factors, compels the conclusion that N.C.G.S. § 15A-1340.19C(a) creates a presumption in favor of sentences of life without parole. See, e.g., N.C.G.S. § 15A-1340.16 (2017) (describing the general procedures for consideration of aggravating and mitigating factors when moving beyond the presumptive range for sentencing, and including a list of both types of factors); id. § 15A-1340.16B(a) (requiring imposition of a life imprisonment without parole sentence "[i]f a person is convicted of a Class B1 felony and it is found as provided in this section that: (i) the person committed the felony against a victim who was 13 years of age or younger at the time of the offense and (ii) the person has one or more prior convictions of a Class B1 felony," unless there are mitigating factors present); id. § 15A-1340.16E (requiring the State to prove criminal gang activity in the same manner as an aggravating factor in order to impose enhanced sentence); id. § 15A-1340.17(c) (containing the classification of offenses and prior record level charts and explaining how to consider aggravating and mitigating factors when sentencing). If the statute required both a consideration of aggravating and mitigating circumstances, it would be possible to see how a juvenile's sentence could be elevated from life with parole to life without parole, the harshest of sentences possible for juvenile offenders. Cf. Circumstance , Black's Law Dictionary (10th ed. 2014) (defining "aggravating circumstance" as "[a] fact or situation that relates to a criminal offense or defendant and that is considered by the court in imposing punishment (esp. a death sentence)"). A consideration of aggravating circumstances would allow the trial court to better decide when to move from sentencing a defendant to life with parole to life without parole. Particularly, a trial court's consideration of aggravating circumstances may help to identify "those whose crimes reflect permanent incorrigibility." Montgomery , --- U.S. ----, 136 S.Ct. at 734, 193 L.Ed.2d at 620.
**105 Additionally, the consideration of aggravating circumstances in this context makes sense when considering that the Supreme Court has compared a juvenile's sentence of life without parole with an adult's sentence of the death penalty. In Graham , the court said that
life without parole is "the second most severe penalty permitted by law." It is true that a death sentence is "unique in its severity and irrevocability," yet life without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency-the remote possibility of which does not mitigate the harshness of the sentence. As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence "means denial of *215 hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days."
560 U.S. at 69-70, 130 S.Ct. at 2027, 176 L.Ed.2d at 842 (brackets in original) (citations omitted).
Importantly, for the death penalty "[t]o pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " Lowenfield v. Phelps , 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568, 581 (1988) (quoting Zant v. Stephens, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235, 249-50 (1983) ). Just as the Supreme Court has required narrow tailoring for capital sentencing, the Court in the Graham - Roper - Miller - Montgomery line of cases mandated that sentencing jurisdictions provide sufficient safeguards to account for the unique position of juveniles and reserve juvenile sentences of life without parole to only the rarest of circumstances.
Here, the plain meaning of N.C.G.S. § 15A-1340.19C(a) starts with a presumption of life without parole and only allows a juvenile to mitigate to a reduced sentence of life with parole. Starting with a presumption of life without parole means juveniles will always have to demonstrate that they are not the "rare" case. Because the plain meaning of this statute **106 does not comply with the Supreme Court's interpretation of the Eighth Amendment in Miller , I respectfully dissent.
Justice HUDSON joins in this dissenting opinion.

Other state courts have looked at this issue similarly, in light of the United States Supreme Court's directive that the sentence of life without parole must be reserved for only the rarest of juvenile offenders. For example, some jurisdictions have read Miller to require the sentencing court to make a more individualized finding that the sentence of life without parole is warranted. See e.g. , Commonwealth v. Batts , 163 A.3d 410, 452 (Pa. 2017) ("The United States Supreme Court did not outlaw a sentence of life in prison without the possibility of parole for all juveniles convicted of first-degree murder; it is only a disproportionate (illegal) sentence for those offenders who may be capable of rehabilitation. Therefore, the presumption against the imposition of this punishment is rebuttable by the Commonwealth upon proof that the juvenile is removed from this generally recognized class of potentially rehabilitable offenders." (citations omitted) ); People v. Hyatt , 316 Mich. App. 368, 419, 891 N.W.2d 549, 574 ("The cautionary language employed by the Court in Roper, Graham , Miller , and Montgomery must be honored by this Court. In light of this language and our need to review defendant Hyatt's sentence under Miller, we conclude that when sentencing a juvenile offender, a trial court must begin with the understanding that in all but the rarest of circumstances, a life-without-parole sentence will be disproportionate for the juvenile offender at issue."), appeal denied sub nom. , People v. Williams , 500 Mich. 921, 888 N.W.2d 64 (2016) ; Aiken v. Byars , 410 S.C. 534, 543, 765 S.E.2d 572, 577 (2014) ("Miller does more than ban mandatory life sentencing schemes for juveniles; it establishes an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered."), cert. denied , --- U.S. ----, 135 S.Ct. 2379, 192 L.Ed.2d 179 (2015).
Furthermore, some states have taken the admonition that these sentences must truly be a rare occurrence even further by entirely abolishing the penalty of life without parole for juvenile offenders. In fact, according to an Associated Press study conducted in July 2017, the following states have entirely abolished life without parole for juveniles: Alaska, Connecticut, District of Columbia, Hawaii, Iowa, Kansas, Kentucky, Massachusetts, Minnesota, Montana, Nevada, New Jersey, North Dakota, South Carolina, South Dakota, Utah, Vermont, West Virginia, and Wyoming. The Associated Press, A State-By-State Look at Juvenile Life Without Parole , U.S. News (July 31, 2017, 5:28 p.m.), https://www.usnews.com/news/best-states/utah/articles/2017-07-31/a-state-by-state-look-atjuvenile-life-without-parole. Of particular relevance here, of these states abolishing life without parole for juveniles after Miller , Iowa and Massachusetts did so through judicial rulings. See State v. Sweet , 879 N.W.2d 811, 832 (Iowa 2016) (holding the sentence of life without parole for juvenile offenders unconstitutional under the Iowa Constitution, but also noting that "in Iowa, the United States Constitution as interpreted by the Supreme Court prevents the state from imposing life without the possibility of parole in most homicide cases involving juveniles. If life without the possibility of parole may be imposed at all under federal law, which is unclear at this point, it may be imposed only in cases where irretrievable corruption has been demonstrated by the "rarest" of juvenile offenders ." (emphasis added) ); Diatchenko v. Dist. Att'y for Suffolk Dist. , 466 Mass. 655, 667-71, 1 N.E.3d 270, 282-85 (2013) (invalidating a mandatory juvenile life without parole scheme as unconstitutional under Miller and the Massachusetts State Constitution and also holding a discretionary sentencing system to impose life without parole on a juvenile unconstitutional under the state constitution).