WILLIAMS, J.:
**420 In this criminal appeal, Michael Jay Finley appeals the circuit court's denial of his pro se motion to reconsider his sentence pursuant *159 to Aiken v. Byars , 410 S.C. 534, 765 S.E.2d 572 (2014). Finley argues his mandatory sentence of life imprisonment with the possibility of parole upon the service of **421 thirty years' imprisonment is functionally equivalent to a sentence of life imprisonment without the possibility of parole (LWOP), which violates the Eighth Amendment's prohibition of cruel and unusual punishments. We affirm.
FACTS/PROCEDURAL HISTORY
In February 1992, a Greenville County grand jury indicted Finley for murder, first-degree burglary, first-degree arson, and armed robbery for his involvement in the death of eighty-year-old James Brockman (Victim). Finley was seventeen years old at the time of Victim's murder. On February 25, 1993, Finley pled guilty as indicted. At the plea hearing, the State provided the following recitation of the facts.
Prior to the night of Victim's murder, Finley and his co-defendant, who both lived in Spartanburg, formed a plan to kill Victim for his money. After making preparations, the pair drove to Victim's home in Greenville County on the night of May 6, 1990. To gain entry to the home, Finley and his co-defendant asked Victim if they could use his phone because they were experiencing car trouble. Once inside, the pair robbed Victim at gunpoint, ransacking the home in the process. Before fleeing the scene, Finley bound Victim's legs and arms with electrical wire and laid him on his bed. Finley then gagged Victim, placing a handkerchief in his mouth and securing it with a necktie. Once Victim was sufficiently secured, Finley and his co-defendant placed a pillowcase over Victim's head and proceeded to strangle him with another necktie until he lost consciousness. The pair then used the barrel of a shotgun to repeatedly bludgeon Victim's head.[1] Believing Victim was dead, Finley and his co-defendant poured gasoline around the house and set multiple fires before leaving the scene in Victim's car. Police apprehended Finley and his co-defendant a few days later. Finley ultimately confessed to the crimes and provided a written statement to police. Victim's autopsy showed extreme blunt force trauma to the head and neck, first and second degree burns, and asphyxiation due to smoke inhalation as the cause of death, which suggested Victim was still alive during the fire.
On April 22, 1993, the circuit court sentenced Finley to concurrent life sentences for murder and first-degree burglary **422 with parole eligibility after the service of thirty years' imprisonment.[2] The court additionally sentenced Finley to twenty-five years' imprisonment for the charges of first-degree arson and armed robbery, each sentence to be served consecutively to Finley's sentence for murder.
On March 17, 2016, Finley filed a pro se motion for resentencing pursuant to Byars .[3] The circuit court held a hearing on the motion on October 14, 2016. At the hearing, Finley argued his sentence constituted a de facto life sentence and, therefore, violated the Eighth Amendment. Specifically, Finley asserted that even though his sentence afforded him parole eligibility after the service of thirty years' imprisonment, the South Carolina parole process did not provide a meaningful opportunity for release because he would not have counsel at the parole hearings. The State argued Finley was not within the class of offenders entitled to reconsideration *160 pursuant to Byars and Miller v. Alabama[4] because he did not receive a juvenile LWOP sentence. The State maintained Finley would have a meaningful opportunity for release and to present **423 mitigating evidence, such as relevant factors of youth, at his first parole hearing in 2022 and at any potential future parole hearings.[5] The State further asserted Finley could be appointed counsel for his parole hearings upon request.
On November 28, 2016, the circuit court issued an order denying Finley's motion for resentencing, finding Finley was "not a member of the class of offenders entitled to resentencing." The court explained, Miller and Byars "rest on the principle that life without the possibility of parole is the harshest of all penalties for a juvenile offender" and are "unequivocal in that the remedy they provide is only available to juveniles sentenced to life without the possibility of parole for homicide." The court found Finley's sentence did not amount to a de facto LWOP sentence because he would become parole eligible upon the service of thirty years' imprisonment.[6] Therefore, the circuit court concluded Finley did have a meaningful opportunity for release that was not available to the class of juvenile offenders comprehended in Miller and Byars . This appeal followed.
STANDARD OF REVIEW
When considering whether a sentence violates the Eighth Amendment's prohibition on cruel and unusual punishments, the appellate court's standard of review extends only to the correction of errors of law. See State v. Perez , 423 S.C. 491, 496, 816 S.E.2d 550, 553 (2018). Therefore, this court will not disturb the circuit court's findings absent a manifest abuse of discretion. Id. An abuse of discretion occurs when the circuit court's finding is based on an error of law or grounded in factual conclusions without evidentiary support. Id. at 496-97, 816 S.E.2d at 553 ; State v. Johnson , 413 S.C. 458, 466, 776 S.E.2d 367, 371 (2015).
**424 LAW/ANALYSIS
Finley argues his life sentence with the possibility of parole upon the service of thirty years' imprisonment constitutes a de facto LWOP sentence in violation of the Eighth Amendment, and therefore, he is entitled to resentencing pursuant to Byars . Finley further contends the mandatory sentencing scheme rendered his life sentence unconstitutional because it prevented consideration of his juvenile status as required by Miller and Byars .[7] We disagree.
*161 The Eighth Amendment to the United States Constitution mandates: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted ." U.S. Const. amend. VIII (emphasis added). The incorporated prohibition against "cruel and unusual punishments" safeguards an individual's right to protection from excessive sanctions, highlighting the essential principle that courts must consider "the human attributes even of those who have committed serious crimes." Graham v. Florida , 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In this vein, sentences that are grossly out of proportion to the severity of the crime are unconstitutional. See id. In applying this principle to juvenile offenders, the United States Supreme Court has incrementally established parameters to ensure proportional juvenile sentences.
In Roper v. Simmons , the Supreme Court addressed whether the Eighth Amendment permitted capital punishment of juvenile offenders. 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). The Court found the death penalty was a disproportionate **425 punishment for an offender who was under the age of eighteen at the time of the crime, reasoning developmental differences between juveniles and adults resulted in diminished culpability. Id. at 569-75, 578, 125 S.Ct. 1183. Specifically, the Court noted the predeveloped nature of a juvenile's character often resulted in impetuous decisions due to an underdeveloped sense of responsibility, a lack of maturity, and a greater susceptibility to negative influences and outside pressures. Id. at 569-70, 125 S.Ct. 1183.
Five years later in Graham v. Florida , the Supreme Court held the Eighth Amendment prohibited the imposition of an LWOP sentence on a juvenile offender for a nonhomicidal crime, finding "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender" and such a sentence deprives a juvenile offender "the opportunity to achieve maturity of judgment and self-recognition of human worth and potential." 560 U.S. at 70, 79, 82, 130 S.Ct. 2011. The Court expanded upon this rationale in Miller v. Alabama , holding mandatory LWOP sentences for juvenile offenders violate the Eighth Amendment. 567 U.S. at 479, 132 S.Ct. 2455. Explaining its reasoning, the Court reiterated its belief that a juvenile offender's greater potential for reform mandates that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty." Id. at 471, 489, 132 S.Ct. 2455. Therefore, the Court held that for a sentencing court to issue an LWOP sentence for homicide to a juvenile offender, the court must conduct an individualized hearing in which it considers various factors, such as the offender's age and maturity and the circumstances surrounding the homicide offense, noting life imprisonment is a disproportionate sentence for all but the rarest of children whose crimes reflect "irreparable corruption." Id. at 477-80, 132 S.Ct. 2455.
The Supreme Court further defined the scope of the Eighth Amendment's protection regarding juvenile sentencing in Montgomery v. Louisiana , holding Miller retroactively applied to "juvenile offenders whose convictions and sentences were final when Miller was decided." --- U.S. ----, 136 S. Ct. 718, 725, 732-36, 193 L.Ed.2d 599 (2016). The Court further stated,
Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every **426 case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
Id. at 736 (citation omitted).
In turn, our supreme court applied these parameters in recent precedent. See Byars , 410 S.C. 534, 765 S.E.2d 572 ; State v. Slocumb , 426 S.C. 297, 827 S.E.2d 148 (2019). In Byars , the court considered whether the holding of Miller extends to juvenile offenders *162 who received an LWOP sentence under a nonmandatory scheme.[8] 410 S.C. at 541, 765 S.E.2d at 576. Although the court found Miller did not expressly prohibit an LWOP sentence for a juvenile offender under a nonmandatory scheme, it held Miller established "an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered." Id. at 543, 765 S.E.2d at 577. Specifically, the court held a sentencing court considering an LWOP sentence for a juvenile offender must consider:
(1) the chronological age of the offender and the hallmark features of youth, including "immaturity, impetuosity, and failure to appreciate the risks and consequence"; (2) the "family and home environment" that surrounded the offender; (3) the circumstances of the homicide offense, including the extent of the offender's participation in the conduct and how familial and peer pressures may have affected him; (4) the "incompetencies associated with youth-for example, [the offender's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender's] incapacity to assist his own attorneys"; and (5) the "possibility of rehabilitation."
Id. at 544, 765 S.E.2d at 577 (alterations in original) (quoting Miller , 567 U.S. at 477-78, 132 S.Ct. 2455 ).
In Slocumb , our supreme court considered whether de facto life sentences violate the Eighth Amendment pursuant to the **427 principles established in Roper , Graham , and Miller . 426 S.C. 297, 827 S.E.2d 148. Although the court acknowledged Slocumb's 130-year sentence constituted a de facto life sentence, it declined to extend the holdings of Graham and Miller , stating "a long line of Supreme Court precedent prohibits us from extending federal constitutional protections beyond the boundaries the Supreme Court itself has set." Id. at 306, 827 S.E.2d at 153. Noting Graham's holding only applied to de jure life sentences, the Slocumb court stated, "Neither Graham nor the Eighth Amendment, as interpreted by the Supreme Court, currently prohibits the imposition of aggregate sentences for multiple offenses amounting to a de facto life sentence on a juvenile nonhomicide offender." Id. at 314-15, 827 S.E.2d at 157.
Applying the aforementioned principles to the present case, we find Finley is not entitled to resentencing pursuant to Miller and Byars . Although Finley received a mandatory life sentence for murder as a juvenile offender, the circuit court's sentence afforded Finley parole eligibility after the service of thirty years' imprisonment. See S.C. Code Ann. § 16-3-20(A) (1992) (providing that a person who is convicted of or pleads guilty to murder must be punished by (1) death; (2) life imprisonment with the possibility of parole after twenty years; or (3) life imprisonment with the possibility of parole after thirty years if the State sought the death penalty and an aggravating circumstance was found but a recommendation of death was not made). This sentence differs significantly from those at issue in Graham , Miller , and Byars in which the juvenile offenders received sentences of life imprisonment without the possibility for parole. See Graham , 560 U.S. at 82, 130 S.Ct. 2011 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." (emphasis added)); Miller , 567 U.S. at 479, 132 S.Ct. 2455 ("We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." (emphasis added)); Byars , 410 S.C. at 545, 765 S.E.2d at 578 ("We hold the principles enunciated in Miller ... apply ... to all juvenile offenders who may be subject to a sentence of life imprisonment without the possibility of parole ." (emphasis added)). As our supreme court recently noted in Slocumb , this **428 court's review is confined by the parameters established by the United States Supreme Court. See 426 S.C. at 306, 827 S.E.2d at 153. Therefore, as it stands, Finley is not a member of the class of offenders contemplated by our precedent. Furthermore, the Supreme Court indicated *163 in Graham and Montgomery that a sentencing court may remedy any potential Eighth Amendment violations by permitting a juvenile offender to be considered for parole. See Graham , 560 U.S. at 82, 130 S.Ct. 2011 ("A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term."); Montgomery , 136 S. Ct. at 736 ("A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."). As Finley's sentence afforded him parole eligibility, we find any potential Eighth Amendment violation was cured. Accordingly, we find the circuit court did not err in denying Finley's motion for resentencing.
CONCLUSION
Based on the foregoing, the circuit court's order is
AFFIRMED.
GEATHERS and HILL, JJ., concur.

Victim's autopsy revealed the beating was so severe that "the stock of the gun broke off and splinters of the stock were found."

At the time of Finley's sentencing, section 16-3-20 of the South Carolina Code (1992) provided that a person who was convicted of or pled guilty to murder was required to be sentenced to (1) death; (2) life imprisonment with the possibility of parole after twenty years' imprisonment; or (3) life imprisonment with the possibility of parole after thirty years' imprisonment if the State sought the death penalty and an aggravating circumstance was found but a recommendation of death was not made. In exchange for Finley's plea and the stipulation that Finley would not be eligible for parole for thirty years, the State agreed to withdraw the notice of intent to seek the death penalty filed on January 22, 1991.

410 S.C. at 545, 765 S.E.2d at 578 (holding a juvenile offender serving an LWOP sentence could file a motion for resentencing when the sentencing court issued the sentence without considering various mitigating factors of the offender's youth).

567 U.S. 460, 479-80, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding mandatory LWOP sentences for juvenile offenders violate the Eighth Amendment and for a sentencing court to issue an LWOP sentence for homicide to a juvenile offender, the court must conduct an individualized hearing in which it considers various factors, such as the offender's age and maturity and the circumstances surrounding the homicide offense, noting life imprisonment is a disproportionate sentence for all but the rarest of children whose crimes reflect "irreparable corruption").

Finley will become eligible for parole on August 11, 2022.

At the Byars hearing, Finley also raised the question of whether a prisoner who received a consecutive sentence following a life sentence could be granted parole. In its order denying Finley's motion for resentencing, the circuit court found Finley would still be eligible for parole in 2022 despite his consecutive sentences. The court based this finding on an affidavit submitted by the General Counsel of the Department of Probation, Parole, and Pardon Services, which stated Finley's consecutive sentences would not preclude him from receiving parole hearings beginning in 2022 and should the parole board grant Finley parole, the consecutive sentences would not prevent his release.

Finley additionally contends his parole eligibility does not alleviate any constitutional violations because the South Carolina parole process does not provide a meaningful opportunity for release. Specifically, Finley asserts the South Carolina parole system does not provide appointed counsel and does not mandate consideration of the mitigating factors of youth comprehended in Miller and Byars . We find Finley's argument regarding the parole process is not ripe for appellate review as a parole board has not yet had the opportunity to consider his case and will not have the opportunity until 2022. See State v. Tucker , 376 S.C. 412, 420-21, 656 S.E.2d 403, 407-08 (Ct. App. 2008) (finding appellant's claim that the circuit court erred in accepting a plea agreement that waived the right to future post-conviction relief was not ripe for appellate review on direct appeal because appellant had not yet sought post-conviction relief).

The Byars court also held the Miller holding applied retroactively in South Carolina. Id . at 540-41, 765 S.E.2d at 575-76.