# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Eric Dale Morgan, Appellant.

Appellate Case No. 2018-001465

---

Appeal From Spartanburg County
Edward W. Miller, Circuit Court Judge

---

Opinion No. 5820
Heard March 2, 2021 – Filed May 12, 2021

---

## REVERSED AND REMANDED

---

Lindsey Sterling Vann and Hannah Lyon Freedman, both
of Justice 360, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown,
Assistant Attorney General Sherrie Butterbaugh, and
Assistant Attorney General Michael Douglas Ross, all of
Columbia; and Solicitor Barry Joe Barnette, of
Spartanburg, for Respondent.

---

**HEWITT, J.:** Eric Morgan was sentenced to death for a murder he committed
roughly two weeks before he turned eighteen. He was resentenced and given life
without parole (LWOP) after the U.S. Supreme Court ruled the death penalty
unconstitutional for crimes committed while the offenders were juveniles.

This appeal arises out of Morgan's request for an additional resentencing. He brought that request years after his first resentencing, but shortly after our supreme court's decision in *Aiken v. Byars* invited new proceedings for certain people with LWOP sentences. *See* 410 S.C. 534, 765 S.E.2d 572 (2014).

The circuit court dismissed Morgan's request on the grounds the mitigating features of Morgan's youth had already been explored in Morgan's death penalty trial and in the resentencing when Morgan received LWOP; years before *Aiken* was decided. We reverse because Morgan falls within the class entitled to relief under *Aiken*.

**FACTS**

Morgan went to trial in March 2004 on charges for murder, armed robbery, and possessing an explosive device. The crime was senseless and tragic. Morgan shot and killed a convenience store clerk as Morgan and a friend attempted to rob the store.

The jury found Morgan guilty of all charges. Based on the jury's recommendation, Judge J. Derham Cole sentenced Morgan to death for the murder, a consecutive sentence of thirty years for armed robbery, and a concurrent sentence of fifteen years for possessing an explosive device.

Our supreme court vacated Morgan's death sentence in 2006 pursuant to the U.S. Supreme Court's decision in *Roper v. Simmons* because Morgan was seventeen at the time he committed the murder. *State v. Morgan*, 367 S.C. 615, 626 S.E.2d 888 (2006); *see also Roper*, 543 U.S. 551 (2005) (holding that sentencing individuals who were minors when they committed a crime was cruel and unusual punishment under the U.S. Constitution). Judge Cole held a resentencing hearing later that year and sentenced Morgan to LWOP. Morgan did not appeal. The transcript from the resentencing hearing was not preserved.

Ten years later—in July 2016—Morgan moved for a second resentencing and argued he fell within *Aiken's* mandate because he was seventeen at the time he committed his crimes. The State moved to dismiss, arguing Morgan already had the benefit of a resentencing hearing meeting *Aiken's* requirements when he was resentenced in 2006. Morgan disagreed, arguing it was not possible for the court to have sufficiently considered the *Aiken* factors in 2006 because *Aiken* was not decided until 2014.

The State called Judge Cole as a witness at the hearing on the State's motion to dismiss. This was over Morgan's objection. As already noted, Judge Cole presided over Morgan's capital proceedings and his 2006 resentencing. Judge Cole testified he considered several factors at Morgan's 2006 resentencing, including the circumstances of the murder, aggravating and mitigating factors, and testimony from Morgan's friends and family. Judge Cole testified he also considered factors related to youth, including Morgan's age at the time of the crimes, Morgan's maturity level, and other youth-related characteristics. Judge Cole additionally said:

> I didn't ignore the fact that 12 randomly chosen citizens thought that [Morgan] should be sentenced to death based upon the nature of the crime and his particular circumstances. That, of course, is not constitutionally permitted now, but it's not something that should be ignored upon the fact that those selected to hear the facts and apply the law thought he should be put to death. And . . . if the crime happened 16 days later, we wouldn't be sitting here today.

The circuit court ruled Morgan's 2006 resentencing hearing sufficiently considered the factors related to Morgan's youth and therefore satisfied *Aiken's* requirements. Morgan filed a motion for reconsideration which the circuit court denied. This appeal followed.

## ISSUES

Did the circuit court err by dismissing Morgan's motion for an *Aiken* resentencing hearing?

Did the circuit court err by allowing Judge Cole to testify?

## ANALYSIS

The arguments here are the same arguments summarized above: Morgan contends he falls within the class of individuals identified in *Aiken* and is entitled to a *de novo* sentencing hearing to consider the factors of youth the opinion identified. He claims his 2006 resentencing hearing did not comply with *Aiken* and could not have complied with *Aiken* because *Aiken* was not decided until 2014.

The State argues the circuit court did not err because Morgan received a full mitigation investigation before his 2004 death penalty trial plus an individualized sentencing hearing when he was resentenced in 2006. The State contends Judge Cole's testimony demonstrates he considered Morgan's youth, satisfying *Aiken's* requirements.

There is no question Judge Cole considered Morgan's youth when resentencing Morgan in 2006. Even so, we are convinced this was not sufficient to satisfy *Aiken's* requirements for the reasons given below.

"When considering whether a sentence violates the Eighth Amendment's prohibition on cruel and unusual punishments, the appellate court's standard of review extends only to the correction of errors of law." *State v. Finley*, 427 S.C. 419, 423, 831 S.E.2d 158, 160 (Ct. App. 2019). "Therefore, this court will not disturb the circuit court's findings absent a manifest abuse of discretion." *Id.* "An abuse of discretion occurs when the circuit court's finding is based on an error of law or grounded in factual conclusions without evidentiary support." *Id.*

In *Aiken*, our supreme court held the U.S. Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), applied retroactively. *See Aiken*, 410 S.C. at 534, 765 S.E.2d at 572. *Miller* held that mandatory imposition of LWOP sentences on juveniles was cruel and unusual punishment. *See Miller*, 567 U.S. at 489. *Aiken* held that juvenile offenders were entitled to an individualized sentencing hearing if they were "convicted for homicides committed while they were juveniles" and "were sentenced to [LWOP] according to existing sentencing procedures, which made no distinction between defendants whose crimes were committed as an adult and those whose crimes were committed as a juvenile." 410 S.C. at 537, 765 S.E.2d at 573.

The *Aiken* majority[1] explained that *Miller* established "an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered." *Id.* at 543, 765 S.E.2d at 577. *Aiken* also held "any juvenile offender who receives a sentence of [LWOP] is entitled to the same constitutional protections afforded by the Eighth Amendment's guarantee against cruel and unusual punishment[,]" regardless of whether it had been mandatory for the circuit court to impose an LWOP sentence. *Id.* at 544, 765 S.E.2d at 577. *Aiken* specifically

---

[1] Because Justice Pleicones stated he would reach the same result as the lead opinion under the South Carolina Constitution, we refer to the lead opinion (authored by Justice Hearn) as "the majority." *See Aiken*, 410 S.C. at 545–46, 765 S.E.2d at 578 (Pleicones, J., concurring).

required South Carolina courts to consider the following factors of youth when sentencing juveniles:

> (1) the chronological age of the offender and the hallmark features of youth, including "immaturity, impetuosity, and failure to appreciate the risks and consequence"; (2) the "family and home environment" that surrounded the offender; (3) the circumstances of the homicide offense, including the extent of the offender's participation in the conduct and how familial and peer pressures may have affected him; (4) the "incompetencies associated with youth—for example, [the offender's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender's] incapacity to assist his own attorneys"; and (5) the "possibility of rehabilitation."

*Id.* at 544, 765 S.E.2d at 577 (quoting *Miller*, 567 U.S. at 477–78). These factors "require[] the sentencing authority 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Id.* (quoting *Miller*, 567 U.S. at 480).

There have only been a few published cases in this area after *Aiken*. Those cases all involved individuals who were not similarly situated to the *Aiken* petitioners—none of those individuals received LWOP sentences. *See State v. Smith*, 428 S.C. 417, 836 S.E.2d 348 (2019) (finding a mandatory minimum sentence of thirty years' imprisonment for murder did not violate the Eighth Amendment or *Miller*); *State v. Slocumb*, 426 S.C. 297, 827 S.E.2d 148 (2019) (finding an eighty year aggregate sentence for multiple crimes committed as a juvenile did not violate the Eighth Amendment pursuant to *Miller*, *Graham v. Florida*,[2] or *Aiken*); *Finley*, 427 S.C. at 419, 831 S.E.2d at 158 (finding the defendant's mandatory sentence for life imprisonment but *with* the possibility of parole did not violate the Eighth Amendment and that the defendant was not entitled to resentencing).

Morgan's case cannot be meaningfully distinguished from *Aiken* in that same way. Morgan plainly falls within the class *Aiken* identified: he was under the age of eighteen at the time he committed the murder and was sentenced to LWOP at his 2006 resentencing hearing. *See Aiken*, 410 S.C. at 537, 765 S.E.2d at 573 (declaring juvenile offenders were entitled to an individualized sentencing hearing if they were

---

[2] 560 U.S. 48 (2010).

(1) convicted for homicide offenses while they were juveniles and (2) were sentenced to LWOP according to existing sentencing procedures that made no distinction between defendants whose crimes were committed as an adult and those whose crimes were committed as a juvenile).

We agree with the State that the record contains evidence that Judge Cole considered Morgan's youth. We also acknowledge Morgan's first sentencing proceeding was a death penalty proceeding. Still, we cannot agree that adding these past hearings together produces a hearing that complied with *Aiken*. *Aiken* clearly states that even though some of the sentencing proceedings for the petitioners in that case "touch[ed] on the issues of youth," none approached the sort of hearing envisioned by *Miller* where the factors of youth were "carefully and thoughtfully considered." 410 S.C. at 543, 765 S.E.2d at 577.

First, there is a problem of timing. *Miller*—the key U.S. Supreme Court case that led to *Aiken*—was not decided until 2012. *Aiken* was not decided until 2014. We do not doubt the sentencing judge diligently considered Morgan's age and other factors associated with youth. Still, it was not possible for the court in 2006 to *fully* consider the factors identified in *Miller* and *Aiken*. Those cases did not exist yet.

Second, there is no getting around the fact that *Aiken* added new things for the sentencing court to consider. Some of the *Aiken* and *Miller* factors have a degree of overlap with the statutory mitigating factors that would have been the focus of Morgan's capital sentencing proceeding. *See* S.C. Code Ann. § 16-3-20(C)(b) (2015) (listing age, mentality, and being under eighteen as mitigating circumstances). Yet, there is plainly a difference between those factors and the more extensive ones identified in *Aiken* that are specifically targeted at youth. For example, although the sentencing court was free to consider the possibility of rehabilitation prior to *Aiken*, it did so without the analytical framework from *Aiken*. And nothing before *Aiken* put extra weight on the opposite side of the scale from LWOP—*Aiken* requires the sentencing court to consider how the differences between youth and adults counsel against an irrevocable lifetime sentence. Even if we pretended these differences did not exist, a sentencing hearing where youth is but one of many considerations is different than conducting a sentencing proceeding where youth is a special consideration and where specific factors related to youth are mandatory guideposts.

Finally, our decision is driven by our reading of the *Aiken* dissent. The dissent noted South Carolina's discretionary sentencing scheme already allowed courts to consider the hallmark features of youth in sentencing. *Id.* at 547, 765 S.E.2d at 579 (Toal,

C.J., dissenting). Of particular note, the dissent analyzed one of the *Aiken* petitioners—Angelo Ham—who received an LWOP sentence after a lengthy sentencing hearing in which many factors were considered, including factors related to youth. *Id.* at 547–52, 765 S.E.2d at 579–81. In applauding the sentencing court's diligent work in conducting the hearing, the dissenters wrote it was "absurd that the majority orders resentencing for *all* petitioners without considering the adequacy of the original hearings." *Id.* at 552, 765 S.E.2d at 581–82.

The majority did not let the point go unanswered. The lead opinion explained that "although some of the hearings touch[ed] on the issues of youth, none of them approach[ed] the sort of hearing envisioned by *Miller* where the factors of youth [were] carefully and thoughtfully considered." *Id.* at 543, 765 S.E.2d at 577. The majority directly addressed the dissent's criticisms, explaining:

> The dissent's discussion of the individual sentencing hearings—in particular its recitation of Angelo Ham's—does not dissuade us of the accuracy of this statement. Instead it highlights the distinction between its reading of *Miller* and ours—we recognize and give credence to the decision's command that courts afford youth and its attendant characteristics constitutional meaning. The dissent would simply continue to treat the characteristics of youth as any other fact.
>
> We are likewise unfazed by the dissent's criticism that we have failed to pinpoint an abuse of discretion; that admonition appears to arise from a fundamental misunderstanding of our holding. We have determined that the sentencing hearings in these cases suffer from a constitutional defect—the failure to examine the youth of the offender through the lens mandated by *Miller*. We decline to denominate the error an abuse of discretion because the sentencing courts in these instances did not have the benefit of *Miller* to shape their inquiries. Those courts will have the opportunity on resentencing to exercise their discretion within the proper framework as outlined by the United States Supreme Court.

*Id.* at 543 n.8, 765 S.E.2d at 577 n.8.

We believe Morgan's case is not meaningfully different from Angelo Ham's and that we are bound by the *Aiken* majority's reasoning that the degree to which youth was considered in this case could not satisfy the requirements of *Miller* or *Aiken* because the "constitutional meaning" afforded to youth and its attendant characteristics require a sentencing hearing tailored to those characteristics.

In reaching this conclusion, we note that we are not expanding any constitutional protections, but rather are finding Morgan falls within the protections prescribed under *Miller* and *Aiken*. *See Slocumb*, 426 S.C. at 306, 827 S.E.2d at 153 (stating both federal and South Carolina "precedent prohibits us from extending federal constitutional protections beyond the boundaries the Supreme Court itself has set").

Because this issue is dispositive, we decline to address Morgan's remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

**CONCLUSION**

We reverse the circuit court's order denying Morgan's request for an *Aiken* resentencing hearing and remand this case to the circuit court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and HUFF, J., concur.**