589 S.E.2d 202

**The STATE, Respondent,**

v.

**Stephen HUTTO, Appellant.**

**No. 3695.**

Court of Appeals of South Carolina.

Submitted Oct. 10, 2003.

Decided Nov. 17, 2003.

---

Daniel W. Luginbill, of Bamberg, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Cecil Kelley Jackson, of Sumter, for respondent.

STILWELL, J.:

Stephen Hutto appeals the trial court's denial of his motion to reconsider sentencing. We affirm.[1]

## FACTS

Hutto and another juvenile escaped from the Department of Juvenile Justice's Rimini Marine Institute, killing a supervisor on their work detail in the process. The pair then continued on a crime spree spanning multiple counties. Hutto entered into a plea agreement with the State, agreeing to plead guilty on numerous charges including murder. The agreement provided Hutto would receive maximum concurrent sentences on all charges except the murder charge, with sentencing on that charge left to the trial court's sound discretion. This arrangement allowed the defense to argue Hutto should receive thirty years for murder and for the State to argue he should receive life without parole.

The court accepted Hutto's pleas and postponed sentencing for thirty days to allow the defense time to prepare arguments regarding mitigation. When the court reconvened for sentencing it heard arguments and testimony from each side. The State submitted a statement from a jailhouse informant who advised police that Hutto admitted after the crimes that he planned the killing and escape two days before the plan was carried out. The informant's statement also described details of the murder.

The State also relayed interviews with two juveniles who were housed at Rimini with Hutto. The first discussed seeing Hutto and his co-defendant view a map and hearing them discuss locations in Bamberg and Greenville. This juvenile alleged Hutto's co-defendant challenged Hutto by taunting, "I don't believe you got the guts to do it."

The second juvenile corroborated the first juvenile's statement regarding the map. The second juvenile also stated

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Hutto and his co-defendant had told the victim they could kill him, steal his truck, and escape the Institute. Hutto's co-defendant also testified concerning the crimes.

At the conclusion of the hearing the court sentenced Hutto to life without parole for murder. Pursuant to his plea agreement, Hutto received maximum concurrent sentences on the other charges.

## DISCUSSION

### I. Solicitor's Comment

█ Hutto asserts that prior to the beginning of the sentencing hearing one of the solicitors approached the van where Hutto was awaiting transport into the courtroom and told the guards, "don't be in a hurry because it's a sure thing he will be going back with you with a life sentence." Hutto asserts the statement deprived him of due process by intimidating him from assisting in his own defense.

█ Traditionally the relevant question to ask in "solicitor comment" cases is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). We have been unable to find another court that has found a denial of due process where the solicitor's comments were uttered to third parties who were not on a jury, but the comments were overheard by a defendant.

Challenges alleging prosecutorial misconduct typically involve a prosecutor's improper efforts to collect evidence or unfair trial tactics. *See, e.g., State v. Quattlebaum*, 338 S.C. 441, 527 S.E.2d 105 (2000) (assistant solicitor viewed the surreptitious videotaping of privileged attorney-client communication); *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997) (prosecutor discussed matters outside of the evidence during closing arguments); *State v. Chisolm*, 312 S.C. 235, 439 S.E.2d 850 (1994) (prosecutor improperly audiotaped telephone conversation with defendant, who was represented by counsel); *State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (prosecutor allegedly used previously suppressed evidence at trial); *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990) (prosecutor allegedly obtained confidential medical records in violation of attorney-client privilege); *State v. Pee Dee*

*News Co.*, 286 S.C. 562, 336 S.E.2d 8 (1985) (prosecutor asked improper questions at trial); *State v. Craig*, 267 S.C. 262, 227 S.E.2d 306 (1976) (prosecutor's conduct at trial allegedly was calculated to arouse unfair prejudice against defendant).

Because Hutto's claim appears to be novel, counsel attempts to analogize the circumstances to the more typical case where a prosecutor makes improper statements before a jury. We do not accept the comparison. Our judicial system prohibits such comments because they urge the jury to base its verdict on something other than the evidence. Such a rationale is not warranted in the present case.

Even if the solicitor made the alleged comments, they did not abrogate Hutto's due process rights in the same manner as would comments to a jury. The comment was directed not to Hutto but to law enforcement. Because the solicitor had already stated in open court that he intended to seek life without parole, it is unclear how the statement could have hampered Hutto's efforts to seek the court's mercy in its sentence. Although Hutto's mother stated in her affidavit that she thought the solicitor's comment kept Hutto from testifying at the sentencing hearing, Hutto has offered no similar claim.

We reject Hutto's contention that the solicitor's statements denied him due process.[2]

## II. Inadmissibility of Evidence During Sentencing

Hutto also argues the trial court should not have allowed the solicitor to introduce the out-of-court statements of the jailhouse informant and the two juvenile residents of the Rimini facility as the prejudicial impact of the statements outweighed any probative value. *See* Rule 403, SCRE.

---

2. Hutto's counsel alludes to a violation of the Rules of Professional Conduct when he suggests the solicitor's comments were directed towards a defendant represented by counsel out of counsel's presence. *See* Rule 407, SCACR, Rule 4.2, RPC ("[A] lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter. . . ."). Hutto's allegation is not that the solicitor attempted to converse with him about the case outside the presence of counsel. Instead, Hutto alleges he overheard a conversation between the solicitor and other law enforcement. We fail to see how even a liberal application of the rule would prohibit such comments.

■ We are not concerned with balancing prejudicial impact with probative value when reviewing evidence used in the sentencing phase of a non-capital crime because evidentiary rules are inapplicable in a sentencing proceeding. Rule 1101(d)(3), SCRE; *State v. Gulledge,* 326 S.C. 220, 228–29, 487 S.E.2d 590, 594 (1997); *see also Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In sentencing a convicted defendant a trial court is only limited by constitutional provisions that require the evidence to be relevant, reliable and trustworthy. *See Gulledge, supra.*

■ The court stated in its order denying resentencing it took into account the statements were those of convicted criminals whose credibility was not wholly reliable. However, the court noted the statements were corroborated by both the physical facts of the crime and similar statements by Hutto's co-defendant. The court reasoned "[i]t would have been impossible for the jailhouse informant to fabricate the conversations which he had with [Hutto] so as to mirror almost exactly portions of the testimony given by [Hutto's co-defendant]."

In short, the trial court properly considered the challenged statements because they were corroborated. The statements were both relevant and reliable.

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.