# THE STATE OF SOUTH CAROLINA

## In The Supreme Court

The State, Respondent,

v.

Jon Smart, Petitioner.

Appellate Case No. 2021-000987

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Clarendon County
D. Craig Brown, Circuit Court Judge

---

Opinion No. 28161
Heard November 16, 2022 – Filed June 21, 2023

---

## AFFIRMED

---

Appellate Defender Joanna Katherine Delany, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy W. Jeffrey Young, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General Tommy Evans Jr., of Columbia; Solicitor Ernest Adolphus Finney III, of Sumter, all for Respondent.

---

**JUSTICE FEW:** Today we address whether a juvenile sentenced to life in prison bears any burden of proof or persuasion when seeking resentencing under *Aiken v. Byars*, 410 S.C. 534, 765 S.E.2d 572 (2014). We hold there is no such burden—on either party—and the resentencing court did not impose such a burden. We affirm the decision of the resentencing court imposing a life sentence.

## I.      Facts and Procedural History

Smart and his co-defendant, Stephen Hutto, were in custody at a Department of Juvenile Justice detention facility near Rimini in Clarendon County in August 1999 when they brutally murdered a citizen volunteer who graciously allowed the boys to work on his family farm under his supervision as a part of their rehabilitation. Smart and Hutto then stole the man's truck and drove it on a violent crime spree starting in Rimini, to the town of Bamberg, and continuing to Myrtle Beach. After Horry County Police officers stopped them for a traffic violation and discovered the truck was stolen, Smart and Hutto led officers on a thirty-mile high-speed chase during which Smart fired shots at pursuing law enforcement vehicles. Smart was sixteen years old. For a more complete presentation of the facts, see *State v. Smart* (*Smart II*), 433 S.C. 651, 655-57, 861 S.E.2d 383, 385-86 (Ct. App. 2021); *State v. Hutto*, 356 S.C. 384, 386-87, 589 S.E.2d 202, 203 (Ct. App. 2003).

Smart pled guilty in 2001 to murder, armed robbery, grand larceny, criminal conspiracy, and escape. The plea court sentenced him to life in prison for the murder. Under subsection 16-3-20(A) of the South Carolina Code (Supp. 1999), Smart was not eligible for parole. In 2016, Smart sought resentencing pursuant to *Aiken*. *Smart v. State*, 416 S.C. 583, 583, 787 S.E.2d 845, 845 (2016). A different circuit court again sentenced him to life without parole. Smart appealed the sentence on multiple grounds, including his claim the resentencing court erred by requiring him to show life without parole was inappropriate. The court of appeals affirmed. *Smart II*, 433 S.C. at 666, 861 S.E.2d at 391. We granted Smart's petition for a writ of certiorari to address his arguments the resentencing court improperly placed on him a burden of proof or persuasion and should have placed the burden on the State.

## II.     *Aiken v. Byars*

In 2012, the Supreme Court of the United States held the Eighth Amendment prohibits mandatory life without parole sentences for homicides committed by a person under the age of eighteen. *Miller v. Alabama*, 567 U.S. 460, 489, 132 S. Ct. 2455, 2475, 183 L. Ed. 2d 407, 430 (2012). In *Aiken*, this Court applied the reasoning of *Miller* retroactively and extended it to South Carolina's discretionary

life without parole sentences.  *See* 410 S.C. at 540-44, 765 S.E.2d at 575-77 (lead opinion); 410 S.C. at 545-46, 765 S.E.2d at 578 (Pleicones, J., concurring) ("While . . . the majority exceeds the scope of current Eighth Amendment jurisprudence in ordering relief under *Miller*, I would reach the same result under S.C. Const. art. I, § 15.").  The Court emphasized the constitutional significance of youth, noting "*Miller* requires the sentencing authority 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'"  410 S.C. at 544, 765 S.E.2d at 577 (quoting *Miller*, 567 U.S. at 480, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424).  We identified five factors from *Miller* that a circuit court must consider before sentencing a juvenile to life without parole.  *Id.* (quoting *Miller*, 567 U.S. at 477-78, 132 S. Ct. at 2468, 183 L. Ed. 2d at 423).

## III.    Resentencing Procedure

In *Aiken*, we effectively granted every motion for resentencing for any juvenile sentenced to life without parole prior to *Miller* and *Aiken*.  We addressed the "Appropriate Procedure" in *Aiken* itself, 410 S.C. at 544, 765 S.E.2d at 577, and required "the following procedures shall be followed" in a subsequent administrative order, *In re Admin. Ord.*, 415 S.C. 460, 460-61, 783 S.E.2d 534, 534 (2016).  We now clarify that in an *Aiken* resentencing hearing—as with almost any other sentencing proceeding[1]—there is no burden of proof or persuasion placed on either party and there is no presumption for or against any sentence.  Instead, both the State and the defendant have a mutual burden *of production* to provide the resentencing court with any evidence and arguments they believe bear on the *Aiken* factors or otherwise relate to what should be the appropriate sentence.  The sentence to be imposed is within the discretion of the resentencing court.  *See State v. Bolin*, 209 S.C. 108, 111, 39 S.E.2d 197, 198 (1946) ("The length of the prison sentence rests in the sound discretion of the trial Court . . . ." (quoting *State v. Johnson*, 159 S.C. 165, 170, 156 S.E. 353, 354 (1930))).  In exercising this discretion, the resentencing court may give no deference to the prior sentencing court's decision to impose life without parole.  The resentencing court must consider all the evidence and

---

[1] *But see* S.C. Code Ann. § 16-3-20 (B) (2015) (providing that "a statutory aggravating circumstance" must be found beyond a reasonable doubt before imposing the death penalty); *State v. Grooms*, 343 S.C. 248, 253-55, 540 S.E.2d 99, 101-02 (2000) (discussing a burden of persuasion in certain domestic violence cases under section 16-25-90 of the South Carolina Code (2015)).

arguments presented at the resentencing hearing and impose an appropriate sentence without any regard to the prior sentencing court's thought process or decision.

Smart argues the resentencing court should have placed a burden of proof or persuasion on the State. In *Miller*, the Supreme Court suggested it should be the "rare juvenile" who is sentenced to life without parole. *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424 (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S. Ct. 1183, 1197, 161 L. Ed. 2d 1, 24 (2005); *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 2026, 176 L. Ed. 2d 825, 841 (2010)). In *Aiken*—quoting the same discussion from *Miller*—this Court stated "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." 410 S.C. at 539, 765 S.E.2d at 575 (quoting 567 U.S. at 479, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424). Smart relies on these statements and others to argue the State should bear the burden of demonstrating that a life without parole sentence is proper. We disagree. The *Miller* discussion related to "the great difficulty" sentencing courts face in "distinguishing" between those juveniles who do not deserve such a sentence and those who do. *Miller*, 567 U.S. at 479-80, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. The statements were not meant to suggest a presumption against life without parole or that any burden must be placed on the State.[2] Today we stand by what was essentially a prediction by this Court that when sentencing courts consider the *Aiken* factors and all the evidence that relates to those factors, because of "children's diminished culpability and heightened capacity for change[,] . . . appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Aiken*, 410 S.C. at 539, 765 S.E.2d at 575 (quoting *Miller*, 567 U.S. at 479, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424). The decision belongs to the resentencing court, and this Court will not recognize any presumption nor impose any burden of proof or persuasion. We trust our circuit judges are well-equipped to make the right decision in each case.

---

[2] *See Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1318-19, 209 L. Ed. 2d 390, 404 (2021) (holding "a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18").

## IV.    Smart's Resentencing

We acknowledge there is language in the resentencing court's oral ruling that could be understood to support Smart's claim the court placed an improper burden on him.[3] After a careful review of the entire record, however, we are convinced the resentencing court thoroughly considered Smart's background and history in light of the *Aiken* factors.  As *Aiken* requires, "the mitigating hallmark features of youth [were] fully explored," 410 S.C. at 545, 765 S.E.2d at 578, and the resentencing court imposed its life sentence de novo without any burden of proof or persuasion on Smart or any deference to the sentence previously imposed.

While we do not review the substance of the resentencing court's decision to impose a life sentence, to explain our ruling the court followed the proper procedure under *Aiken*, we summarize the thought process the court went through in making its decision.  We begin with a statement the resentencing court made at the conclusion of the hearing, "I have methodically gone through each bit of information that's been provided to me [and] made what I believe to be, not easy, not easy on my part, but made what I believe to be the right decision in this case."  The record supports the court's statement.  First, the court considered the transcript from and other evidence surrounding the original guilty plea to murder.  The court heard extensive testimony from an expert psychologist who interviewed Smart several times and reviewed thousands of pages of his records.  The court also heard testimony from four other witnesses the State and Smart presented regarding the circumstances of the crime and Smart's personal background and history.

The court then heard arguments from the attorneys on both sides and analyzed the *Aiken* factors in light of those arguments.  As an example of this analysis, the court compared Smart's sister's claim at the resentencing hearing that her parents ignored the children and exposed them to drugs with Smart's father's testimony at a family court juvenile delinquency proceeding before Smart was sent to Rimini.  In light of the father's testimony—particularly his efforts to get Smart drug treatment—the sentencing court discounted the sister's testimony.  Also, the court carefully considered whether Smart and Hutto planned the murder in advance or acted suddenly and impulsively.  The State argued a map of their escape route

---

[3] For example, the circuit court concluded its ruling by saying, "It is with no pleasure at all that I affirm so to speak, or deny your client's motion and impose a life sentence."  Based on the circuit court's in-depth consideration of the *Miller* factors, we believe this was simply a misstatement by the court.

demonstrated the murder was planned in advance, but the court discounted the map because—the court appears to have concluded—it just as easily could have been made as part of their plans for after their eventual release. Ultimately, based on testimony from other juveniles to whom Smart and Hutto spoke about planning the murder, the court was convinced the boys planned the murder and escape in advance; it was not a sudden or impulsive action. The court also found Smart appreciated the consequences of his actions because he and Hutto hid the victim's body and attempted to wash the blood away from the scene. The court considered Smart's multiple statements to law enforcement officers, his interactions with solicitors, and his conduct during the guilty plea, all as indicative Smart was competent to assist counsel in his defense. After viewing autopsy photographs, the court noted the sheer brutality of the murder. The resentencing court noted the plea court entered a "negotiated sentence" of life in prison, as a result of which the plea court had no choice but to accept the negotiation or reject the plea, but stated that on resentencing the court was considering everything presented in the hearing in order to make its own choice.

Finally, the resentencing court stated,

> I have taken all these factors into consideration, and I still believe it's the right decision. Will I lose sleep over it [?] . . . Probably so. . . . These decisions aren't easy. Certainly, I have tried. And I have told you all, I typed my own 30-page transcript in my review of all this stuff. I have tried to hit on each of these points in coming to this conclusion. Again that's not – it wasn't easy.

In sum, it is clear from the record the resentencing court carefully considered all of the evidence presented at the resentencing hearing by both the State and Smart and correctly treated the proceeding as a de novo sentencing hearing, with no burden of proof or persuasion on Smart.

## V.    Conclusion

This Court's decision in *Aiken* requires juveniles "receive an individualized hearing where the mitigating hallmark features of youth are fully explored" before being sentenced to life without parole. 410 S.C. at 545, 765 S.E.2d at 578. The resentencing court in this case gave Smart just such an individualized hearing and soundly exercised its sentencing discretion without placing any burden of proof or persuasion on Smart nor giving any deference to the previously imposed sentence.

**AFFIRMED**.

**BEATTY, C.J., KITTREDGE, JAMES, JJ., and Acting Justice Kaye G. Hearn, concur.**